IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Richard E. O'Rourke, et al.,               Case No. 3:01CV7235

      Plaintiff

   v.                                          ORDER

Unitrend, Inc., et al.,

      Defendant

This is a suit by investors in a start-up company which did not succeed. Seeking a return of their invested funds, the plaintiffs brought this suit in Hawaii, alleging, *inter alia*, violations of that state's security laws. On motion of the defendants, the case was transferred to this district.

Following transfer, the case proceeded to settlement, which was reached on September 30, 2002. Judgment was entered on the settlement agreement on March 26, 2003.

Thereafter, the case went into a stall mode, caused principally by the defendants periodically repeated representations through counsel that funding was about to be obtained for their company, and payments pursuant to the settlement and on the judgment were about to begin. Defendants' attorney repeatedly made assurances and promises, which this court, over the objections of plaintiffs' counsel,

accepted as having been made in good faith. Once, however, plaintiffs undertook to execute on the judgment, some payments began to be made.

In the meantime, plaintiffs became disenchanted with one of their attorneys, Robert Smolenski, who had pulled the laboring oar on their behalf. They had also consulted with another attorney, Richard White, a relative of one of the plaintiffs. Mr. White's involvement for most of the time that this case has been pending has been as a spectator. Plaintiffs also had local counsel, with whom in due course they likewise became unhappy.

The disenchantment and unhappiness appears to have largely, if not entirely, been related to the fees that plaintiffs were being asked to pay.

Plaintiffs originally retained Mr. Smolenski to work on an hourly basis, given the difficulties, which were apparent from the outset, of retrieving plaintiffs' investment from an apparently judgment-proof company. Mr. Smolenski failed to provide periodic fee statements, though he received, with this court's approval, interim payments from the proceeds of the settlement as they sporadically became available.

Plaintiffs contend that they asked for statements; Mr. Smolenski states he informed plaintiffs of the approximate amount of the total fees that were accumulating. He also states that final determination could be made after "the dust settled." Beginning on June 18, 2004, Mr. Smolenski began submitting statements for fees due and owing to plaintiffs.

By the Fall of 2004, plaintiffs began shuffling their attorneys: original local counsel withdrew, replaced by new local counsel. Mr. Smolenski withdrew as lead counsel, and was replaced by Mr. White on December 28, 2004. These changes presumably resulted from fee disputes between plaintiffs and their former counsel.

In the meantime, a check for $129,568.69 received from defendants was ordered deposited in the court's registry, as plaintiffs objected to payment of the major portion of those funds to Mr. Smolenski in satisfaction of his statement for remaining fees.

Presently pending is Mr. Smolenski's motion for disbursement of $90,124.39 of the escrowed funds as a final fee payment. Plaintiffs, through Mr. White, oppose the motion, contending that, if granted, the fees received and to be received by Mr. Smolenski, which would total $229,534.95, will exceed the settlement proceeds that have been and are to be received by plaintiffs.

Plaintiffs' judgment, their brief notes, presently amounts to approximately $507,000.

Plaintiffs contend that they were not able to give fully informed and knowing consent to the fees because they were not kept informed along the way of the amount of fees that was accruing. In response for their requests for statements, Mr. Smolkenski, they state, simply assured them that the fee, once the dust settled, would be fair.

Plaintiffs also argue that under Hawaii law, Mr. Smolenski cannot receive more than twenty-five percent of any recovery:

> In all courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorney's fees . . . . a fee that the court determines to be reasonable; . . . . provided that this amount shall not exceed twenty-five percent of the judgment.

Haw. Rev. Stat. § 607-14.

Plaintiffs, through Mr. White, premise their argument, in part, on the overall fees that they have either been billed or have had to pay to all their counsel, including Mr. White. He has billed the plaintiffs

3

(at a family discounted rate) $72,639.55, though he acknowledges that he has played a relatively minor role in these proceedings.

I decline to take whatever amounts Mr. White may have billed to or received from the plaintiffs into account in considering Mr. Smolenski's pending petition for disbursement. To the extent that Mr. White gave advice about the case pending either the settlement, judgment entry, or receipt of settlement proceeds, his work would appear to have been either duplicative or in the nature of second-guessing. If Mr. White wanted to charge and plaintiffs wanted to pay for that sort of service, there should be no effect on Mr. Smolenski.

Certainly, to the extent that plaintiffs wanted more information from Mr. Smolenski, especially about his fees, they should and could have taken steps to accomplish that result. They could have, but apparently did not, ask Mr. White to contact Mr. Smolenski and get that information from him. They could have, but did not (until the end of 2004), discharged Mr. Smolenski and retained Mr. White.

Plaintiffs and presumably Mr. White were well aware that Mr. Smolenski would, in due course, be seeking additional fees for work that he was doing. That work was productive, though not as completely productive as plaintiffs would have liked. On balance, he appears to have gotten a good bit of blood from a rather dry turnip.

Had plaintiffs not had bystander counsel, their complaints about Mr. Smolenski's failure to provide periodic statements would have greater effect. Having elected to have Mr. White advise them, and agreeing, apparently, to paying him rather handsomely for doing so, plaintiffs cannot complain that Mr. Smolenski wants to be paid for his services on the hourly basis to which they agreed when first they retained hm.

4

I disagree, moreover, that the reasonableness of Mr. Smolenski's fee request should be determined by examining what plaintiffs have recovered thus far, and comparing that amount to what they either have been charged by or have paid to all their attorneys. Thus far, plaintiffs have had five attorneys in this case: Mr. Smolenski, Mr. White, and three local counsel. Having to pay their other counsel (particularly Mr. White), while continuing to keep Mr. Smolenski working on their behalf, should not keep Mr. Smolenski from being compensated pursuant to their agreement with him.

The principal issue is whether the agreement to bill at an hourly rate is enforceable in light of the Hawaii statute cited above.

Plaintiffs contend that Haw. Rev. Stat. § 607-14 prohibits Mr. Smolenski from charging and recovering fees for his services in an amount greater than twenty-five percent of the judgment. Section 607-14, however, is entirely inapplicable to the dispute at hand.

Section 607-14 addresses the issue of attorneys' fees that a prevailing party may recover from the opposing party in an action in assumpsit. The statute does not govern the relations between the prevailing party and his or her attorney; i.e., whether the fees an attorney charges the client are reasonable.

Because § 607-14 does not apply to this dispute, the fee agreement is enforceable and Mr. Smolenski is entitled to additional compensation for his services on behalf of the plaintiffs.

I will, in any event, make some adjustments to the fee request.

First, I limit the fee award to the $273 hourly rate originally quoted by Mr. Smolenski. When he raised his hourly rate *in medias res*, it was incumbent on him to notify his clients and get their approval. He appears not to have done so.

In addition, I decline to award fees for work done with regard to the instant fee dispute. I agree with the plaintiffs that, as a matter of equity, they should be charged only for the services that resulted in a benefit to them – i.e., put, or may put money from the defendants in their pockets. As to such benefit, they should pay what they agreed to pay: namely Mr. Smolenski's hourly rate.

I decline, however, to award interest. The delay in resolving this fee dispute might have been avoided or at least reduced if Mr. Smolenski had more dutifully and professionally provided his clients with periodic fee statements. As a matter of equity, the delay that has resulted, and for which he can be faulted, should not increase the amount he receives.

Mr. Smolenski shall submit a recalculated statement of the amount due and owing for his services to the plaintiffs at a rate of $273/hour, exclusive of time spent with regard to the instant fee dispute and interest. Amounts previously not billed to the plaintiffs, such as discounted or unbilled paralegal fees and expenses, shall likewise not be included in the recomputation.

I expect that Mr. Smolenski shall err, if there is a question about the allocation of time between services for the plaintiffs and time spent on this fee dispute, in favor of the plaintiffs.

There is also pending a motion by the defendants to reconsider an order entered September 8, 2004, granting plaintiffs' motion for a fee award against the plaintiffs. Defendants contend that less than the full amount of that award will actually be expended as fees to Mr. Smolenski and plaintiffs' original former counsel. As to such counsel, defendants allege that the plaintiffs paid them a discounted, rather than a full fee.

I agree with defendants that, to the extent that less than the amount of the award actually becomes paid to counsel, the remainder should be credited to the judgment against them.

In light of the foregoing, it is

6

ORDERED THAT:

1. Leave be granted to Robert Smolenski, Esq., to submit on or before May 20, 2005, a revised fee statement in accordance with this order;

2. Defendants to submit on or before June 1, 2005, a statement of amount remaining from the prior fee award following reduction for the payments to Mr. Smolenski and their former local counsel. So ordered.

s/James G. Carr<br>James G. Carr<br>Chief Judge